# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PENDANT PROPERTIES LLC, ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| ) | |
| v. ) | Case No.: CIV-22-245-GLJ |
| ) | |
| (1) EMC PROPERTY & CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| **DEFENDANT.** ) | |

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
# AND BRIEF IN SUPPORT

Phil R. Richards, OBA #10457
RICHARDS & CONNOR, PLLP
12th Floor, ParkCentre Bldg.
525 S. Main Street
Tulsa, Oklahoma 74103
Telephone:  918/585.2394
Facsimile:  918/585.1449
Email:  prichards@richardsconnor.com

**ATTORNEY FOR DEFENDANT
EMC PROPERTY & CASUALTY COMPANY**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**..................................................................................................iii-iv

**INTRODUCTION** ........................................................................................................................1

**STANDARD OF REVIEW** ..........................................................................................................2

**DEFENDANT'S STATEMENTS OF UNDISPUTED MATERIAL FACTS** ...........................3

**ARGUMENTS & AUTHORITY** .................................................................................................9

**I.      PLAINTIFF HAS FAILED TO PRODUCE ANY EVIDENCE WHICH WOULD ESTABLISH A *PRIMA FACIE* CASE ON EITHER OF ITS LEGAL THEORIES OR TO SUPPORT ITS DAMAGES CLAIMS**................................................................................................................9

**II.     SUMMARY JUDGMENT FORECLOSING PLAINTIFF FROM SEEKING PUNITIVE DAMAGES IS WARRANTED BY THE EVIDENCE BEFORE THE COURT** .............................................13

**CONCLUSION** ..........................................................................................................................15

**CERTIFICATE OF SERVICE** .................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664 (10th Cir. 1998) ......................................................... 2

*Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080 (Okla. 2005) .......................................... 11, 13, 14

*Barnes v. Okla. Farm Bureau Mut. Ins. Co.,* 11 P.3d 162 (Okla. 2000) ....................................... 13

*Boggs v. Great N. Ins. Co.,* 659 F. Supp. 2d 1199 (N.D. Okla. 2009) ........................................... 10

*Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105 (Okla. 1991) ............................................................ 11

*Buzzard v. McDanel,* 736 P.2d 157, (Okla. 1987) ........................................................................ 12

*Cates v. Integris Health, Inc.,* 412 P.3d 98 (Okla. 2018) .............................................................. 10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................................ 2, 3

*Christian v. Am. Home Assurance Co.,* 577 P.2d 899 (Okla. 1977) .............................................. 11

*Dodson v. St. Paul Ins. Co.,* 812 P.2d 372 (Okla. 1991) ............................................................... 10

*Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F.3d 1255 (10th Cir. 2008) .................................. 3

*Hale v. A.G. Ins. Co.,* 138 P.3d 567 (Okla. 2006) ........................................................................ 12

*Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760 (Okla. 1984) ........................................................ 11

*May v. Mid-Century Ins. Co.,* 151 P.3d 132 (Okla. 2006) ............................................................ 10

*McCoy v. Okla. Farm Bureau Mut. Ins. Co.,* 841 P.2d 568 (Okla. 1992) ..................................... 12

*Newport v. USAA,* 11 P.3d 191, (Okla. 2000) .............................................................................. 11

*Pitman v. Blue Cross and Blue Shield of Okla.,* 217 F.3d 1291 (10th Cir. 2000) ........................ 10

*Roberts v. State Farm Mut. Auto. Ins. Co.,* 61 F. App'x 587 (10th Cir. 2003) ............................. 12

*Rodebush v. Okla. Nursing Homes, Ltd.,* 867 P.2d 1241 (Okla. 1993) ......................................... 13

*U.S. Fid. And Guar. Co. v. Briscoe,* 239 P.2d 754 (Okla. 1951) .................................................. 10

*Wilspec Techs., Inc. v. DunAn Holding Grp. Co.,* 204 P.3d 69 (Okla. 2009) ............................... 13

**STATUTES**

23 O.S. § 91 ................................................................................................................................14

**RULES**

Fed.R.Civ.P. 26........................................................................................................................2, 9

Fed.R.Civ.P. 56...................................................................................................................1, 2, 3

LCvR 56.1....................................................................................................................................1

**OTHER AUTHORITIES**

Oklahoma Uniform Jury Instruction No. 23.1 ............................................................................10

**COMES NOW** EMC Property & Casualty Company. Defendant herein, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and LCvR56.1 respectfully moves this Court to grant it summary judgment on Plaintiff's breach of insurance contract and bad faith theories of recovery, as well as Plaintiff's prayer for punitive damages. Plaintiff's discovery responses have made clear that despite having the burden of proof, Plaintiff cannot produce evidence to establish a prima facie case to prove its claim in this lawsuit.

## INTRODUCTION

Plaintiff, an Oklahoma limited liability company, alleges that on August 16, 2020 its commercial building located in Ardmore, Oklahoma was damaged by a storm while the building was insured by a policy issued by EMC. Almost four months after the alleged building damage occurred, on December 1, 2020, Plaintiff submitted an insurance claim to EMC. EMC investigated the claim, including through inspections by an independent adjuster and a professional engineer. The engineer concluded, and EMC concurred, that only minor damage to the "soft metal" of the building's roof was caused by the storm, but that no other reported damage to the building occurred during the period in which EMC's policy was in force insuring the building. Thus, EMC issued a check to Plaintiff in the amount of $10,504.57 for the amount of the covered damage to the building in excess of the policy deductible.

Plaintiff then filed suit against EMC, alleging that EMC breached the insurance policy and did so in bad faith. EMC removed the lawsuit to this Court on August 31, 2022 [Dkt. # 20], and filed it Answer on September 7, 2022 [Dkt. # 6]. The parties held a Federal Rule of Civil Procedure 26(f) conference on October 3, 2022 [Dkt. # 10], whereafter discovery could be conducted pursuant to Rule 26(d)(1). On November 11, 2022, Plaintiff provided EMC with its Initial Disclosures pursuant to Rule 26(a)(1). On February 1, 2023, EMC served interrogatories

and requests for production of documents upon Plaintiff, to which Plaintiff responded on February 28, 2023.

EMC understands, as it must pursuant to Rule 26(g)(1), the Plaintiff's interrogatory answers and responses to EMC's requests for production represent the totality of evidence available to Plaintiff not only when it filed its lawsuit against EMC, but through the date upon which Plaintiff responded to those discovery requests, as required by Rule 33 and Rule 34, respectively.[1] What those discovery responses, as well as Plaintiff's Initial Disclosures, demonstrate is a complete absence of evidence to support either Plaintiff's breach of insurance contract or bad faith theories alleged against EMC, or its prayer for any damages, not least for punitive damages. Thus, EMC brings this motion seeking summary judgment on all aspects of Plaintiff's claim against it in this lawsuit.

## STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to a material fact which renders the moving party is entitled to judgement as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if, under the substantive law, it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The summary judgment movant bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. Such a movant may make its *prima facie* demonstration simply by show the Court a *lack* of evidence on an essential element

---

[1] Plaintiff has not supplemented its discovery responses pursuant to Rule 26(e)(1)(A) as of the filing of this motion, and thus it must be concluded that as of this date those discovery responses are neither "incomplete or incorrect" such that supplementation under that Rule would be required. It would, of course, be very disturbing if, in response to this motion, Plaintiff were suddenly to present some heretofore withheld evidentiary materials purportedly supporting its claim.

2

of the nonmovant's claim since, as the Supreme Court noted in *Celotex*, under Rule 56(c) "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." 477 U.S. at 323 (internal citations omitted). Thus, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1261 (10th Cir. 2008) (internal citations omitted).

## **DEFENDANT'S STATEMENTS OF UNDISPUTED MATERIAL FACTS**

1. EMC insured Plaintiff's building for direct physical loss of, or damage to, the insured property caused by a covered cause of loss, including wind and hail, but only where such loss or damage commenced during the policy period of April 1, 2020 through April 1, 2021. Exh. 1, Insurance Policy, at Pendant_000001, 000002, 000009, 000025 & 000030.[2]

2. The policy specified that, where roof surfaces of the insured building were damaged by a covered cause of loss, including by wind and hail, that coverage for such damage was only on an actual cash value basis and not for replacement cost, and that the policy afforded no coverage for cosmetic damage caused by wind or hail. Exh. 1, Insurance Policy, at Pendant_000040.

3. The policy included a $5,000.00 deductible for damage due to windstorm or hail. Exh. 1, Insurance Policy, at Pendant_000007.

4. On December 1, 2020, Plaintiff submitted a Property Loss Notice to EMC under the policy effective from April 1, 2020 through April 1, 2021, alleging that the insured building had suffered hail damage to its roof on August 16, 2020. Exh. 2, Property Loss Notice.

---

[2] Documents identified by a Bates number beginning with "Pendant" are those which were produced by Plaintiff to EMC in discovery and to which Plaintiff affixed this Bates designation.

5. EMC's investigation of the claim included an inspection of the building by Oklahoma licensed engineer Shawn Thompson, P.E. on January 28, 2021, from which Thompson concluded that the building had suffered minor hail damage to certain metal components of the building including cooling fins on some of the air conditioning condenser units on the roof and cosmetic denting to various of the vent caps, ducting and guttering on the roofs, and hail dents to metal awnings and first floor aluminum window sills of the building, but that the building did not suffer hail damage to the surfaces of the built up bituminous and gravel ballast roof systems or to the bituminous coated parapets.  Exh. 3, Thompson Report, at Pendant_000174, 000175.

6. On April 2, 2021, based upon its investigation of the insurance claim including Thompson's observations and opinions, EMC wrote to Plaintiff that it had concluded the total amount of the covered damage to the building from the reported hail claim was $18,352.28 which, after reduction for recoverable depreciation and the policy deductible, resulted in a net payment owed to Plaintiff of $10,504.57.  Exh. 4, EMC 4/2/21 Claim Decision Letter with attached Estimate, Pendant_000132-000141.

7. On April 7, 2021, EMC issued a check payable to Plaintiff in the amount of $10,504.57.  Exh. 5, EMC Check, Pendant_000182.

8. In its Initial Disclosures, Plaintiff identified documents Bates labeled as Pendant_000001 through Pendant_000182 as the documents in its possession or control which it might use to support its claims, and produced those documents, which included only the following:

Pendant_000001-000131:  EMC policy effective 4/1/20-4/1/21

Pendant_000132-000142:  4/2/21 EMC Claim Decision Letter w/ Estimate

    Pendant_000143-000176:  Shawn Thompson, P.E. 2/23/21 Inspection Report

    Pendant_000177:  EMC 12/3/20 Claim Acknowledgment Letter

    Pendant_000178-000180:  Notices of Nonrenewal of Insurance

    Pendant_000181:  EMC 12/8/20 Email re Loss Control Inspection

    Pendant_000182:  EMC 4/7/21 Claim Check for $10,504.57

Exh. 6, Plaintiff's Initial Disclosures, at pg. 2; Exh. 1, Pendant_000001-000131; Exh. 4, Pendant_000132-000141; Exh. 3, Pendant_000143-000176; Exh. 5, Pendant_000182; Exh. 7, Pendant_000142, 000177-000181 (remaining documents produced by Plaintiff with its Initial Disclosures not previously identified as exhibits).

    9.    Concerning the required computation of damages claimed by Plaintiff and the documents supporting those damages, Plaintiff's Initial Disclosures issued over two years after the alleged hail damage to its building, and almost two years after EMC advised Plaintiff of its claim decision and issued payment to Plaintiff, stated only:

> Plaintiff has not made a determination of its full damages at this time, but Plaintiff does seek compensation for loss to its covered property, and other damages allowed under Oklahoma law, as reflected in OUJI 22.4 in an amount to be determined by the jury, and for attorney's fees, interest, and penalties.

Exh. 6, Plaintiff's Initial Disclosures, at pg. 2.

    10.    In response to EMC's Interrogatory No. 3, which required that Plaintiff provide an itemization of all damages for which it seeks recovery through this lawsuit, and various specific information as to any such damages, Plaintiff similarly responded:

> Plaintiff has not made a determination of its full damages at this time, but Plaintiff does seek compensation for loss to its covered property (which is contested, and in Plaintiff's view exceeds Defendant's computation) and other damages allowed under Oklahoma law, as reflected (*sic*) OUJI 22.4 in an amount to be determined by the  jury, and for attorney's fees, interest, and other penalties.  Plaintiff will supplement this response as it completes discovery and experts have submitted the requisite reports.

Exh. 8, Plaintiff's Responses To Defendant EMC Property And Casualty Company's Discovery Requests, at pg.s 3-4.

    11.    In response to EMC's Interrogatory No. 13, which required that Plaintiff state the facts which it believes tends to prove that EMC breached the insurance contract in relation to Plaintiff's insurance claim, and for the identity of witnesses and documents which Plaintiff believes tend to establish those facts, after asserting an objection Plaintiff answered only with the following:

> Notwithstanding and without waiving this objection, Plaintiff generally states that EMC has unreasonably withheld payment of insurance benefits owed because of a covered loss under the insurance contract. EMC lacked, and lacks, a reasonable basis for the denial of the claim.
>
> In addition, Plaintiff submitted the hail damage claim in December 2020, and within three months EMC gave notice of non-renewal. During that time, EMC sent an adjuster on December 17, 2020, then sent an engineer on January 28, 2021. EMC was slow to respond and only sent reports after repeated requests.
>
> When trying to obtain new insurance from third parties, Plaintiff had to obtain and present a loss run report for the property. There were open claims. As Plaintiff understands it, this caused premiums on the new like-policy (*sic*) to almost double.
>
> In Plaintiff's view, EMC's investigation was biased and outcome-oriented. One example is from the engineer's report,
>
>> Weather research for hail including the National Weather Service and Hail Verification Report #16011165 produced by CoreLogic Spatial Solutions, LLC at this location indicated that hail 1.0" in diameter or larger, an accepted minimum for creating damage to the most susceptible building components, may have occurred on Aug 16, 2020 (1.0 in. diameter) and Apr 21, 2020 (1.0" diameter) and prior to that not since May 22, 2011 (1.4 in diameter). While radar generated reports are an indicator of the maximum sized hail that could have fallen in the vicinity of this property, it is not a guarantee that this sized hail may actually have occurred. . .
>
> The language seems designed to minimize the fact that hail damaged the property. Other nearby commercial properties had roofs replaced after the August 2020

storm. The engineer's report did not include a picture of a broken window upstairs, which could have only been caused by flying debris.

For further response, see the response to Interrogatory No. 1 and 2 above.

Notably, Plaintiff's Answers to Interrogatory No. 1 identified only the person who answered Plaintiff's discovery requests, and Interrogatory No. 2 listed two roofers, EMC's claim adjuster, and EMC's independent adjuster and engineer Thompson, as those persons Plaintiff believed had knowledge of *any* fact alleged in the Petition by which Plaintiff instituted this lawsuit in state court. Exh. 8, Plaintiff's Responses To Defendant EMC Property And Casualty Company's Discovery Requests, at pg.s 10-12.

12. In response to Interrogatory No. 14, which required that Plaintiff state the facts which it believed tend to prove that EMC breached any duty of good faith and fair dealing owed to Plaintiff, and to identify those individuals and documents which Plaintiff believed had information tending to establish any such facts, after objecting Plaintiff provided even less information, none of it factual:

Notwithstanding, and without waiving this objection, Plaintiff generally states that EMC has unreasonably withheld payment of insurance benefits owed because of a covered loss under the insurance contract. EMC lacked, and lacks, a reasonable basis for the denial of the claim.

For further response, see the response to Interrogatory No. 1, 2, and 13 above.

Exh. 8, Plaintiff's Responses To Defendant EMC Property And Casualty Company's Discovery Requests, at pg. 13.

13. In response to Interrogatory No. 15, which required that Plaintiff state the facts which it believed tend to prove that the conduct of EMC in relation to the insurance claim was such as to warrant the imposition of punitive or exemplary damages upon it, and to identify those individuals and documents which Plaintiff believed had information tending to establish any

7

such facts, after objecting Plaintiff simply repeated its Answer to the preceding interrogatory *verbatim*:

> Notwithstanding, and without waiving this objection, Plaintiff generally states that EMC has unreasonably withheld payment of insurance benefits owed because of a covered loss under the insurance contract. EMC lacked, and lacks, a reasonable basis for the denial of the claim.
>
> For further response, see the response to Interrogatory No. 1, 2, and 13 above.

Exh. 8, Plaintiff's Responses To Defendant EMC Property And Casualty Company's Discovery Requests, at pg. 14.

14. Finally, in response to a host of document production requests, including those which required production of the documents which the interrogatories above required be identified, Plaintiff produced only the following documents, none of which bore remotely on the inquires of EMC to obtain some actual evidence by which Plaintiff might support it legal theories and damages claims in this lawsuit:

> Pendant_000183-000200:  Ardmore Fire Department Inspection Reports
>
> Pendant_000201-000312:  3/24/20 Appraisal Report for Great Nations Bank
>
> Pendant_000313-000425:  Environmental Risk Assessment for Great Nations Bank
>
> Pendant_000426-000429:  EMC Commercial Experience Report
>
> Pendant_000430-000433:  Various receipts and ledgers for expenses in September & October of 2022 totaling $3,173.96
>
> Pendant_000434:  2/21/23 Vendor Contact List

Exh. 8, Plaintiff's Responses To Defendant EMC Property And Casualty Company's Discovery Requests, beginning at pg. 15, and particularly at Responses 12, 13, 14 & 15; Exh. 9, Pendant_000183-000434.

8

**ARGUMENTS & AUTHORITY**

I. **PLAINTIFF HAS FAILED TO PRODUCE ANY EVIDENCE WHICH WOULD ESTABLISH A *PRIMA FACIE* CASE ON EITHER OF ITS LEGAL THEORIES OR TO SUPPORT ITS DAMAGES CLAIMS**

As noted above, it must be assumed that Plaintiff has complied with the requirements of Rule 26(g)(1) in responding to EMC's discovery requests, and has disclosed any factual information and documentary evidence which is available to support its legal theories and claims for damages asserted against EMC in this lawsuit. However, Plaintiff's responses establish that it has no such evidence. Beyond asserting that it made an insurance claim to EMC, which EMC investigated and paid in an amount "which is contested, and in Plaintiff's view exceeds Defendant's computation," *see* Exh. 8 at Answers to Interrog. ## 3 & 13, Plaintiff offers nothing but its own conclusory allegations as to its own perceptions of EMC's failings. It has presented no evidence to establish that any covered property damage occurred beyond that which engineer Thompson concluded was caused by a covered loss during the policy period. Nor has it presented any evidence that the amount estimated by EMC as owed for the damage which Thompson did conclude was caused by a covered loss during the policy period was insufficient to repair that damage. Instead, Plaintiff simply complains without any evidence that "EMC has unreasonably withheld payment of insurance benefits owed . . ." and "lacked, and lacks, a reasonable basis for the denial of the claim." *See* Exh. 8 at Answers to Interrog. ## 13, 14 & 15. Such offers nothing more than an allegation, and fails to recognize that it is the burden of Plaintiff to establish through evidentiary proof that EMC breached the insurance contract and did so in bad faith, causing Plaintiff damages. It is not the burden of EMC to prove that it did not. In light of Plaintiff's lack of evidence to support a *prima facie* case of either breach of contract or bad faith, summary judgment is appropriate on both theories.

The core dispute between the parties concerns whether EMC breached the insurance contract by failing to pay what was owed for property damage that was covered under the policy. The interpretation of an insurance contract is, of course, purely a question of law for the Court. *See Dodson v. St. Paul Ins., Co.*, 812 P.2d 372, 376 (Okla. 1991). Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. *May v. Mid-Century Ins. Co.*, 151 P.3d 132 (Okla. 2006). Under Oklahoma law, the insured bears the burden to prove that a claim falls within the scope of an insurance policy's coverage. *See U.S. Fid. and Guar. Co. v. Briscoe*, 239 P.2d 754, 756 (Okla. 1951); *Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000); *Boggs v. Great N. Ins., Co.*, 659 F. Supp. 2d 1199, 1204-1205 (N.D. Okla. 2009). As the Supreme Court made clear in *Celotex*, where an insured is unable to produce evidence to prove any element of its claim, the insurer is entitled to summary judgment in its favor. Supra, 477 U.S. at 323.

To prevail on a claim that an insurer breached an insurance contract under Oklahoma law, the plaintiff must demonstrate (1) the formation of a contract between the insurer and insured; (2) that the insurer's specific conduct constitutes a breach of the terms and conditions of that contract, and (3) that the insured suffered damages as a direct result of the insurer's alleged breach. *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018); *see also* Oklahoma Uniform Jury Instruction No. 23.1. While there is no dispute here that Plaintiff and EMC entered into a contract by which EMC insured Plaintiff's building, it is the Plaintiff's burden to produce evidence of specific conduct by which EMC breached the terms and conditions of the contract in its handling of Plaintiff's insurance claim and that such breach actually caused

10

Plaintiff some damage. Yet here, Plaintiff's discovery responses demonstrate that it lacks evidence which might tend to prove either of these latter two elements of this legal theory.

In Oklahoma, to prove a *prima facie* case of bad faith for failure to pay a claim, a plaintiff must present evidence to establish the following four elements:

(1) The insured's loss was covered under the insurance policy issued by the insurer;

(2) The insurer's refusal to pay the claim in full was unreasonable under the circumstances because it had no reasonable basis for the refusal, it did not perform a proper investigation, or it did not evaluate the results of the investigation properly;

(3) The insurer did not deal fairly and act in good faith with the insured; and,

(4) The insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured.

*Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005). Of course, once again the burden is upon the plaintiff to prove the elements of its bad faith theory. *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 761 (Okla. 1984). It does not establish a prima facie claim of bad faith to simply show that the insured disagreed with the claim outcome, since "[t]he tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment, or litigate any claim 'to which the insurer has a reasonable defense.'" *Newport v. USAA*, 11 P.3d 191, 195 (Okla. 2000) (quoting *Buzzard v. Farmers Ins. Co*., 824 P.2d 1105, 1109 (Okla. 1991)). Indeed, the insurer must be shown to be more than negligent in its lack of a "good faith belief in some justifiable reason for the actions it took or omitted to take . . ." *Badillo*, 121 P.3d at 1093-1094. Oklahoma has held insureds to this standard of proof since the seminal decision adopting the tort in *Christian v. Am. Home Assurance Co*., 577 P.2d 899 (Okla. 1977).

Just as with Plaintiff's breach of contract theory, there is again no dispute that EMC insured the Plaintiff's building from April 1, 2020 through April 1, 2021, or that the building

suffered some damage from wind and hail during that period for which EMC made payment under the policy. What is lacking is any evidence which Plaintiff is able to produce that EMC's conclusion as to the scope of that storm damage was erroneous, much less one reached unreasonably and in bad faith by the insurer. Indeed, the actual evidence which Plaintiff has produced through discovery, stripped of Plaintiff's speculation, is that EMC had the report of a licensed engineer upon which it relied in concluding that it was paying Plaintiff for all of the storm caused damage which was owed after application of the policy's hail and windstorm deductible.

"The decisive question is whether the insurer had a 'good faith belief at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" *Hale v. A.G. Ins. Co.*, 138 P.3d 567, 573 (Okla. 2006) (quoting *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)). Thus, to survive summary judgment, Plaintiff was obligated to produce evidence from which a reasonable jury could find a clear showing that EMC did not have a reasonable, good faith basis for withholding some greater payment. *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992). This required Plaintiff to present evidence to show that EMC's conclusion was not merely wrong, but that it had no reasonable basis for its conclusion, since "an insurer's investigation need only be reasonable, not perfect." *See Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) (citing *Buzzard*, 824 P.2d at 1109).

Instead, what the actual evidence produced by Plaintiff establishes, such being the insurance policy, the report of engineer Thompson, the claim decision letter from EMC with the estimate explaining the basis for its payment consistent with Thompson's conclusions, and the check issued to make that payment, is that the conclusion of EMC in its resolution of this

12

insurance claim was reasonable. Plaintiff, while complaining that EMC's damage calculation "is contested, and in Plaintiff's view exceeds Defendant's computation" nonetheless "has not made a determination of its full damages at this time" and, in fact, offers no evidence of *any* damages it claims are owed beyond what EMC has paid. *See* Exh. 8 at Answer to Interrog. # 3.

Plaintiff has been unable to present any evidence to establish a *prima facie* case that EMC breached the insurance contract, much less acted in bad faith. Such was Plaintiff's obligation when it filed this lawsuit, yet almost two years after having done so it still is unable to produce more than suppositions and allegations to prove its claim. In the absence of evidence to establish the essential elements of its breach of contract and insurance bad faith claims, summary judgment against Plaintiff upon those claims is appropriate and warranted.

**II.    SUMMARY JUDGMENT FORECLOSING PLAINTIFF FROM SEEKING PUNITIVE DAMAGES IS WARRANTED BY THE EVIDENCE BEFORE THE COURT**

Plaintiff's discovery responses further demonstrate the complete absence of any evidentiary basis to support its assertion that EMC should be subject to an award of punitive or exemplary damages due to its conduct in handling this claim. Of course, "punitive damages are not recoverable solely for breach of contract obligations." *Wilspec Techs., Inc. v. DunAn Holding Grp. Co.*, 204 P.3d 69, 74 (Okla. 2009). Thus, it cannot recover punitive damages in relation to its breach of contract theory. Such damages are recoverable when supported by proper proof in relation to a tort claim for bad faith. However, under Oklahoma law "[a] plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993).

The availability of punitive damages in an insurance bad faith case is not automatic. *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 175 (Okla. 2000). In a bad faith case,

6:22-cv-00245-GLJ   Document 14   Filed in ED/OK on 04/07/23   Page 18 of 20

"for punitive damages to be allowed there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." *Badillo*, 121 P.3d at 1106. Stated differently, an insurer must "recklessly disregard" or "intentionally and with malice breach its duty to deal fairly and act in good faith with its insured" for punitive or exemplary damages to be recoverable against it. 23 O.S. § 9.1(C)(2); *Badillo*, 121 P.3d at 1105. Such must be proven by Plaintiff through clear and convincing evidence. 23 O.S. § 9.1(B). Yet the Plaintiff's discovery responses demonstrate an absence of any such proof.

To the contrary, when required by EMC's discovery request to state the factual basis upon which Plaintiff alleged that EMC's conduct warranted the imposition of punitive or exemplary damages upon it, Plaintiff was only able to respond, "Plaintiff generally states that EMC has unreasonably withheld payment of insurance benefits owed because of a covered loss under the insurance contract. EMC lacked, and lacks, a reasonable basis for the denial of the claim." See Exh. 8, Answer to Interrog. # 15. Setting aside that EMC clearly paid, rather than denied, Plaintiff's insurance claim, such an allegation is not evidence. At best, Plaintiff's response does nothing more than establish that it is dissatisfied with the amount which EMC paid upon its insurance claim, but has neither an explanation nor evidence to demonstrate that EMC was wrong in the amount which it concluded was owed.

Such forms no basis upon which a prima facie case for punitive damages may be presented to a jury. Having been unable to articulate a factual basis upon which EMC's conduct might be deemed to have been in reckless disregard of the rights of Plaintiff, or intentional and malicious towards it, and having failed completely to offer any evidence to support such a claim, EMC respectfully submits that Plaintiff's quest for punitive damages is legally unsupported to the extent that EMC is entitled to summary judgment foreclosing that claim.

## CONCLUSION

Plaintiff was obligated, in providing its Initial Disclosures and in responding in good faith to EMC's discovery requests, to disclose the factual information and supporting evidence upon which its theories of breach of insurance contract and bad faith are based, and to likewise disclose the factual information and supporting evidence upon which it alleges that EMC's conduct warrants the imposition of punitive or exemplary damages. Yet the information which it has disclosed through those discovery documents establishes a complete absence of any such evidence. Instead, at best Plaintiff is able to state that it disagrees with the amount EMC has paid upon its insurance claim, but is unable to articulate why EMC's decision was incorrect or even how much more it contends EMC owes. This is grossly inadequate to present a *prima facie* case to establish either legal theory, or any entitlement to punitive damages. On this basis, it is respectfully submitted that EMC is entitled to summary judgment upon Plaintiff's theory of breach of the insurance contract, upon Plaintiff's theory of insurance bad faith, and upon Plaintiff's allegation that EMC should be held liable for punitive or exemplary damages.

**WHEREFORE**, **PREMISES CONSIDERED**, EMC respectfully requests that this Court enter judgment in its favor, as a matter of law, upon Plaintiff's claim against EMC in its entirety, and to discharge EMC from this lawsuit with its costs, and for such other and further relief as the Court may deem just and equitable in the premises.

        Respectfully submitted,

        *s/ Phil R. Richards*
        Phil R. Richards, OBA #10457
        RICHARDS & CONNOR, PLLP
        12th Floor, ParkCentre Bldg.
        525 S. Main Street
        Tulsa, Oklahoma 74103
        Telephone:  918/585.2394
        Facsimile:  918/585.1449
        Email:  prichards@richardsconnor.com

        **ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 7th day of April 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Terry M. McKeever, Esq. – tmm@fylaw.com
S. Alex Yaffe, Esq. – ay@fylaw.com
FOSHEE & YAFFE

**ATTORNEYS FOR PLAINTIFF**

        *s/Phil R. Richards*

16